## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Camille Sturdivant,**

      **Plaintiff,**

v.                                                                               Case No. 18-cv-2661-JWL

**Blue Valley Unified School District,**
**USD 229; Amy Pressly; Carley Fine;**
**Katie Porter; and Kevin Murakami,**

      **Defendants.**

## **MEMORANDUM & ORDER**

Plaintiff, a former member of her high school dance team, filed this lawsuit alleging that she was excluded from team dances and team activities based on her race, African-American, in violation of her Fourteenth Amendment right to equal protection. She asserts a single equal protection claim, brought pursuant to 42 U.S.C. § 1983, against each of the individual defendants—defendant Carley Fine, the coach of the dance team; defendant Kevin Murakami, the choreographer of the dance team; defendant Amy Pressly, the principal of the high school; and defendant Katie Porter, a teacher at an elementary school in the district and the mother of another dancer on the team. She asserts several claims under § 1983 against defendant Blue Valley Unified School District, USD 229 alleging that the equal protection violations committed by the individual defendants flowed from the District's failure to train those employees on issues of discrimination. Finally, plaintiff asserts a claim against the School District under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits racial discrimination by recipients of federal funds.

This matter is presently before the court on defendant Carley Fine's motion to dismiss (doc. 12) on the basis of qualified immunity and failure to state a claim and defendant Katie Porter's motion to dismiss (doc. 36) for failure to state a claim. As explained below, defendant Fine's motion is denied and defendant Porter's motion is granted.

**Applicable Standards**

In analyzing defendants' motions to dismiss, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted).[1] The court then determines whether the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citations omitted). In determining the plausibility of a claim, the court looks to the elements of the particular cause of action, "keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element." *Id.* (quotations omitted). While "the nature and specificity of the allegations required to state a plausible claim will vary based on context," "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id.* (citations and quotations omitted). Thus, a "claim is facially plausible if the plaintiff has pled 'factual content that allows the court to draw the reasonable inference that

---

[1] The court does not accept as true allegations that are legal conclusions. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

42 U.S.C. § 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." "Section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (quoting *Reynolds v. Sch. Dist. No. 1, Denver*, 69 F.3d 1523, 1536 (10th Cir.1995)). In other words, § 1983 is a remedial vehicle for raising claims based on the violation of constitutional rights; there can be no "violation" of § 1983 separate and apart from the underlying constitutional violations. *Id*. (citations omitted).

**Background**

Consistent with the standard articulated above, the following well-pleaded allegations, taken from plaintiff's amended complaint, are accepted as true. Defendant Blue Valley School District, USD 229 is a Kansas public school district comprised of over 20,000 students headquartered in Overland Park, Kansas. At the pertinent time, plaintiff was an African-American student of Blue Valley Northwest High School and a member of the school's "Dazzlers" dance team during her sophomore, junior and senior years of high school. Plaintiff graduated in May 2018. During plaintiff's senior year, there were 14 members on the dance team and plaintiff was one of two African-American members.

Defendant Carley Fine, who is Caucasian, was employed by the District as the head coach of the Dazzlers. Defendant Kevin Murakami was, according to plaintiff, an agent of the District and the acted as the choreographer of the Dazzlers. Plaintiff alleges that during the summer before her senior year, defendant Murakami excluded her from performing in a contemporary dance scheduled for the upcoming school year because her "skin was too dark" and the "audience would look at her and not the other dancers." Plaintiff alleges that defendant Murakami also told her that her "skin color clashed with the color of the costumes." Plaintiff alleges that defendant Fine had knowledge of defendant Murakami's decision to exclude plaintiff and his reasons for doing so and that she agreed with both the decision and basis for that decision. In September 2017, plaintiff's parents met with defendant Amy Pressly, the principal at the high school, for the purpose of notifying defendant Pressly about the comments made to plaintiff and the fact that plaintiff had been excluded from participating in the contemporary dance. According to plaintiff, defendant Pressly informed them that defendant Fine could pick whomever she wanted to perform in the dances.

In April 2018, plaintiff learned that she had been accepted as a member of the "Golden Girls" dance team at the University of Missouri, where she intended to enroll for college for the next academic year. Shortly thereafter, on May 1, 2018, plaintiff was assisting defendant Fine by cuing music for the Dazzlers during practice. Defendant Fine provided her personal cell phone to plaintiff for purposes of cuing the music. While plaintiff had defendant Fine's cell phone, a text message from defendant Murakami "popped up" on the phone screen. The full text exchange between defendant Murakami and defendant Fine was as follows:

Murakami: I can't believe Maggie didn't make it again. I'm heart broken.

| | |
|---|---|
| Fine: | AND [PLAINITFF] MADE MENS.[2]  I can't talk about it. |
| Murakami: | THAT DOESN'T MAKE SENSE.  I'm so mad. |
| Fine: | It actually makes my stomach hurt. |
| Murakami: | haha |
| Fine: | Bc she's fucking black.  I hate that. |
| Murakami: | me too |

Plaintiff alleges that she read the exchange and was sickened.  While it is unclear from the allegations in the complaint, it appears that plaintiff took a "screen shot" of the text exchange and forwarded it to her phone.  That same day, plaintiff's parents showed defendant Pressly the text exchange between defendants Murakami and Fine.  The District terminated defendant Fine's employment on May 2, 2018.  Defendant Pressly instructed defendant Fine that she could not be on school property or have any contact with plaintiff or any other member of the dance team.  Neither the District nor defendant Pressly enforced that ban.

On May 3, 2018, a dance team dinner was held at the house of one of the members of the dance team.  The dinner was coordinated by a parent.  Defendant Fine attended the dinner, but plaintiff was excluded from the event.  Defendant Katie Porter also attended the dinner, as her daughter was a dancer on the Dazzlers.  Defendant Porter is a third-grade teacher at an elementary school in the District.  Plaintiff alleges, without explanation, that defendant Porter "participated in excluding" plaintiff from the dinner.  On May 8, 2018, the team banquet was held at a location in Kansas City, Missouri, but defendant Pressly had told plaintiff's parents that the team banquet

---

[2] It is unclear what the term "MENS" references in defendant Fine's text message.

had been cancelled. Defendant Fine and defendant Porter attended the team banquet. Plaintiff was excluded from the team banquet.

Plaintiff's parents notified defendant Pressly that plaintiff had been excluded from the dinners and that defendant Fine continued to participate in team activities despite the termination of her employment. According to plaintiff, defendant Pressly responded that "nothing could be done." Plaintiff, however, alleges that the dinners were school-sponsored events because of the presence of defendant Porter, a teacher in the District. During the team's final school performance in May 2018, all team members except plaintiff and the other African-American member wore purple ribbons on their uniforms with the initials "CF" for Carley Fine. After the performance, all team members except plaintiff and the other African-American member posed for team photos on school property.

**Discussion**

In her amended complaint, plaintiff alleges that defendant Fine, in violation of plaintiff's Fourteenth Amendment right to equal protection, excluded plaintiff from performing in the contemporary dance and that defendants Fine and Porter, in violation of plaintiff's Fourteenth Amendment right to equal protection, excluded plaintiff from participating in team dinners based on plaintiff's race. Defendant Fine moves to dismiss the amended complaint on the grounds that she is qualifiedly immune from liability for the claim asserted against her and, in any event, the amended complaint fails to state a claim against her. Defendant Porter moves to dismiss the amended complaint because it does not plausibly allege that she acted under color of state law for purposes of § 1983. In the alternative, defendant Porter moves to dismiss on qualified immunity

6

grounds—an issue that the court declines to address because it grants defendant Porter's motion on the "under color of state law" issue.

*Under Color of State Law*

The court begins with defendant Porter's argument that the complaint does not plausibly allege that she was acting under color of state law, because that argument is dispositive of defendant Porter's motion. *See Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (to establish § 1983 claim, plaintiff must demonstrate that the actor is acting under color of state law). In her response to the motion to dismiss, plaintiff asserts two theories as to why defendant Porter acted under color of state law when she attended two team dinners from which plaintiff was allegedly excluded. First, she contends that defendant Porter had the authority to stop "known abuse" but failed to do so. Second, she contends that defendant Porter, in her private capacity, engaged in joint action with school officials to discriminate against plaintiff based on her race. Because the complaint does not plausibly allege that defendant Porter was acting under color of state law under either theory, the claim against defendant Porter is dismissed.

Relying on *Murrell v. School District No. 1*, 186 F.3d 1238 (10th Cir. 1999), plaintiff first contends that defendant Porter may be held liable because she was deliberately indifferent to "known abuse." *Murrell* involved sexual harassment at a public school by one student (over whom the named school officials had authority) against another student and the complaint contained allegations that the school officials had actual knowledge of the student's harassing conduct and failed to remedy that conduct. In that case, the Circuit held that the plaintiff stated a § 1983 claim against the school officials for violating the victim's equal protection rights by

7

refusing to remedy the sexual harassment despite having actual knowledge of it. *Id*. at 1250-51. Plaintiff's reliance on *Murrell*, then, indicates that her claim against defendant Porter is not that defendant Porter herself made the decision to exclude plaintiff from the team dinners but that defendant Porter knew about that decision, had supervisory authority over the person who made that decision, and failed to do anything about it.[3]

But the allegations in plaintiff's amended complaint are distinguishable from *Murrell* in at least two key respects. First, there are no allegations in the amended complaint that defendant Porter had any supervisory authority over defendant Fine or anyone else who may have made the decision to exclude plaintiff from the dinners. While plaintiff alleges that defendant Porter was both a third-grade teacher in the District and a parent on the team, there is no suggestion that defendant Porter attended the dinners in her capacity as a District employee rather than as a parent of a dancer. In fact, plaintiff alleges that the team banquet was paid for by team parents and was held outside of school hours and off of school property and that the May 3, 2018 dinner was held at the home of another dancer. Finally, and most importantly, there are no allegations in the amended complaint that defendant Porter had any knowledge or understanding that plaintiff had been excluded from or not invited to the team dinners. As *Murrell* makes clear, to state a valid § 1983 claim against a teacher in her individual capacity where the teacher has not directly participated in the violation, plaintiff must plausibly allege that the teacher—here, defendant Porter—knew about the alleged constitutional violation and acquiesced to that conduct by refusing to reasonably respond to it. *Id.* at 1250. There is simply no suggestion that defendant Porter knew

---

[3] As indicated earlier, plaintiff's amended complaint asserts only that defendant Porter "participated in excluding" plaintiff from the dinners.

of any potential constitutional violation or that plaintiff had been excluded from the dinners. There is no plausible suggestion that defendant Porter "consciously acquiesced" to an equal protection violation.[4] The court, then, cannot find state action on the part of defendant Porter under the theory espoused by plaintiff.

Plaintiff alternatively contends that defendant Porter, to the extent she was acting in her private capacity, was engaged in joint action with school officials to violate plaintiff's constitutional rights. Even a private party acts under color of state law if that party is a "willful participant in joint action with the State or its agents." *Schaffer*, 814 F.3d at 1157 (citations and quotations omitted). To apply the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id*. There are at least two ways to establish concerted action. *Id*. Under the "conspiracy approach," the "public and private actors must share a common, unconstitutional goal." *Id*. Alternatively, concerted action may be found where "there is a substantial degree of cooperative action between state and private officials" or if there is "overt and significant state participation" in the deprivation of a plaintiff's constitutional rights. *Id*.

There are no allegations in the amended complaint—and none in plaintiff's response to the motion—that plausibly suggest that defendant Porter had any involvement in the deprivation of plaintiff's constitutional rights whatsoever. There is no allegation suggesting that defendant

---

[4] In her amended complaint, plaintiff alleges that a parent of one of the dancers "told other parents that [defendant Fine] said 'something racial to [plaintiff], but it was blown out of proportion.'" Plaintiff does not allege that this parent provided any information to defendant Porter and, in any event, this allegation does not indicate any knowledge on the part of defendant Porter that plaintiff had been excluded from the team dinners.

9

Porter had any knowledge of—let alone influence over—any decision to exclude plaintiff from the dinners or, for that matter, that she even realized that plaintiff had been excluded from the dinners. There is no allegation that defendant Porter shared a common, unconstitutional goal with anyone else or that she agreed with any course of action relating to plaintiff's attendance at the dinners. Simply put, there is no allegation that defendant Porter had any understanding that plaintiff had been excluded from the dinners. Plaintiff's joint-action theory fails. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995) (University officials were not "state actors" under joint action test where officials observed allegedly unlawful pat-down searches but there was no indication that officials provided assistance in connection with searches, influenced the decision to conduct searches or participated in those searches in any way).

In short, because plaintiff has failed to plausibly allege that defendant Porter acted under color of state law as is required for liability under § 1983, the claim against defendant Porter must be dismissed.

*Qualified Immunity*

Defendant Fine first moves to dismiss plaintiff's amended complaint on the basis that she is qualifiedly immune from liability for the single equal protection claim asserted against her. The doctrine of qualified immunity shields government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In resolving a motion to dismiss based on qualified immunity, a court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was

clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). When determining whether qualified immunity applies, the court may choose which of the two prongs should be addressed first. *The Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016).

Defendant Fine contends that plaintiff has failed to plead a constitutional violation. The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) and citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.")). Thus, to establish an equal protection violation, plaintiff must allege specific facts that defendant Fine treated her differently than other similarly situated members of the dance team. *Id.* Moreover, to state a race-based equal protection claim, plaintiff must sufficiently allege that defendant Fine was motivated by racial animus. *Id.* (citation omitted). Plaintiff's amended complaint satisfies this standard. She alleges that defendant Fine treated her differently than other members of the dance team—by excluding her from performing in the contemporary dance and by excluding her from team dinners—based on her race. She further alleges that defendant Fine was motivated by racial animus, as supported by the specific allegation concerning the text exchange between defendant Fine and defendant Murakami. Plaintiff has pleaded facts sufficient to show that defendant Fine

11

plausibly violated her right to equal protection. *See Townsend-Johnson v. Cleveland*, 494 Fed. Appx. 833, 837 (10th Cir. 2012) (affirming denial of qualified immunity at pleading stage where African-American teacher alleged specific acts of discrimination and identified group of non-African-American employees who were treated differently).

Defendant contends that plaintiff's allegation concerning her exclusion from the contemporary dance cannot state a viable claim because plaintiff admits in her complaint that she was ultimately "allowed to dance" after her parents complained about her exclusion. While that allegation appeared in the initial complaint, it does not appear in the amended complaint—the operative complaint here. The court, then, need not decide at this juncture whether and to what extent it is significant if plaintiff was ultimately permitted to participate in the contemporary dance. Moreover, while defendant has submitted newspaper articles purporting to show that plaintiff participated in the contemporary dance in a national competition, those articles do not shed any light on whether plaintiff was excluded from other performances of the contemporary dance.

Finally, defendant contends that plaintiff's allegation concerning her exclusion from team dinners cannot state a viable claim because defendant Fine, at the time of these dinners, was no longer a District employee and, thus, could not have been acting under color of state law. But plaintiff has alleged that defendant Fine attended team dinners as early as the day immediately following the termination of her employment and that the District knew that defendant Fine was continuing to attend team dinners after her termination. In light of those allegations, it is at least plausible that defendant Fine made the decision to exclude plaintiff from those team dinners prior to the termination of her employment or, at a minimum, that she was still serving as the "voice"

of the team and was acting jointly with state actors as required to show that defendant Fine was acting under color of state law when she allegedly excluded plaintiff from the team dinners. *See Beedle v. Wilson*, 422 F.3d 1059, 1071 (10th Cir. 2005) (private citizen may be willful participant in joint action with the State if citizen exerted influence over state actor; if citizen's judgment was substituted for that of the state actor, or if she participated in unlawful conduct); *Powell v. Miller*, 104 F. Supp. 3d 1298, 1312-13 (W.D. Okla. Apr. 21, 2015) (denying summary judgment on state actor issue where former prosecutor may have exerted influence over current prosecutors and continued to intervene with government officials).

Because plaintiff has alleged that defendant Fine plausibly violated her right to equal protection, the next question is whether the law was clearly established at the time of the alleged violation that defendant Fine's conduct violated the Constitution. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). Defendant Fine asserts that she is entitled to qualified immunity because no case law exists that would have put her on notice that "sending a private text message on her personal cell phone" would subject her to liability. This argument is premised on a mischaracterization of the nature of plaintiff's equal protection claim against defendant Fine. That claim is not based on defendant Fine's text exchange with defendant Murakami, but on defendant Fine's role in excluding plaintiff, based on plaintiff's race, from performing in the contemporary dance and participating in team dinners. Plaintiff's allegations regarding the text exchange simply support a required element of plaintiff's claim—that defendant Fine was motivated by racial animus when she

13

excluded plaintiff from those activities. *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (to state a race-based equal protection claim, the plaintiff must sufficiently allege that defendants treated him or her differently than other similarly situated individuals and that defendants were motivated by racial animus). Assuming, then, that defendant Fine excluded plaintiff from the dance and from team dinners based on plaintiff's race, she violated plaintiff's right to be free from racial discrimination in a public school—a right that has been clearly established since at least 1950. *McLaurin v. Oklahoma State Regents for Higher Education*, 339 US 637, 642 (1950) (holding that a state-sponsored graduate school's disparate treatment of an African-American student based on race violated the Equal Protection Clause).

Defendant Fine cautions that the court cannot analyze the "clearly established" inquiry at too high a level of generality and that while racial discrimination in public schools is clearly impermissible on an abstract level, she had no reason to know that her specific actions were constitutionally prohibited. This argument again focuses almost exclusively on the text exchange and fails to address the specific allegations made in the amended complaint concerning the contemporary dance and the team dinners. Moreover, where the alleged constitutional violation is plain, "it is unnecessary to resort to such granular detail as to require another case involving a 'purple cow.'" *See Butler v. Board of County Commr's for San Miguel County*, 920 F.3d 651, 668-69 (10th Cir. 2019) (Lucero, J., dissenting) (citing *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (reaffirming the "obvious case" rule)). The specific allegations in plaintiff's amended complaint present an obvious case and, accordingly, the general standards articulated by the Supreme Court in *McLaurin* are sufficiently clear that every reasonable school official would have understood that precluding plaintiff from dancing in the contemporary dance or from attending team dinners

based on plaintiff's race violated plaintiff's right to equal protection. The court, then, flatly rejects defendant Fine's assertion that the lack of case law specifically addressing facts analogous to this case entitles her to qualified immunity.

*Failure to State a Claim*

Aside from her qualified immunity argument, defendant Fine contends that plaintiff's complaint fails to state a claim for relief because defendant Fine was not "acting under color of state law" during the text exchange with defendant Murakami and because the contents of the text exchange cannot, as a matter of law, constitute an equal protection violation. These arguments, as noted earlier, are based on a misconstruction of the allegations in the amended complaint and are accordingly rejected.

*First Amendment*

Lastly, defendant Fine asserts that plaintiff's complaint must be dismissed because the content of the private text messages described in the complaint are protected by defendant Fine's First Amendment rights. According to defendant Fine, then, the court cannot punish her for that speech. The court flatly rejects the argument that a judgment against defendant Fine in the context of this case would violate defendant Fine's First Amendment rights. As noted earlier, plaintiff's equal protection claim against defendant Fine is not based on the content of the text messages. The claim is based on defendant Fine's alleged role in decisions to exclude plaintiff, based on plaintiff's race, from performing in the contemporary dance and participating in team dinners. The allegations concerning the text messages support plaintiff's claim that defendant Fine was

15

motivated by racial animus in making those decisions. *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (to state a race-based equal protection claim, the plaintiff must sufficiently allege that defendants treated him or her differently than other similarly situated individuals and that defendants were motivated by racial animus). In the analogous context of employment discrimination, statements made by persons accused of discriminatory animus are routinely relied upon as evidence to support liability. *See Unal v. Los Alamos Public Schools*, 638 Fed. Appx. 729, 740 (10th Cir. 2016) (evidence of comments demonstrating animus toward plaintiff based on national origin supported inference of discrimination and liability under Title VII); *Greene v. Safeway Stores*, 98 F.3d 554, 561 (10th Cir. 1996) (jury could infer discrimination from, among other evidence, statements made by plaintiff's supervisor); *see also Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1246-47 (10th Cir. 1999) (judgment against employer for failing to regulate offensive workplace speech does not violate First Amendment).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Fine's motion to dismiss (doc. 12) is **denied** and defendant Porter's motion to dismiss (doc. 36) is **granted.**

**IT IS SO ORDERED.**

Dated this 30th day of May, 2019, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge