IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Camille Sturdivant,

    Plaintiff,

v.                                                                                              Case No. 18-cv-2661-JWL

Blue Valley Unified School District,
USD 229; Amy Pressly; Carley Fine;
and Kevin Murakami,

    Defendants.

## MEMORANDUM & ORDER

Plaintiff, a former member of her high school dance team, filed this lawsuit alleging that she was excluded from team dances and team activities based on her race, African-American, in violation of her Fourteenth Amendment right to equal protection. In her amended complaint, plaintiff asserts equal protection claims, brought pursuant to 42 U.S.C. § 1983, against each of the individual defendants—defendant Carley Fine, the coach of the dance team; defendant Kevin Murakami, the choreographer of the dance team; and defendant Amy Pressly, the principal of the high school. She asserts several claims for municipal liability under § 1983 against defendant Blue Valley Unified School District, USD 229 (hereinafter the "District") predicated on the District's decision to hire defendant Fine in the first instance and its failure to train defendants Fine and Murakami on issues of discrimination. Finally, plaintiff asserts a claim against the District under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits racial discrimination by recipients of federal funds.

This matter is presently before the court on the District's motion for partial judgment on the pleadings (doc. 40) pursuant to Federal Rule of Civil Procedure 12(c). Specifically, the District challenges the sufficiency of two claims asserted by plaintiff —plaintiff's "inadequate hiring" claim and a claim that the District failed to train Katie Porter, a teacher who has since been dismissed from this lawsuit. As will be explained, the motion is granted.

**Applicable Standard**

A motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c) is treated as a motion to dismiss for failure to state a claim made pursuant to Rule 12(b)(6). *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)). In analyzing defendant's motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted).[1] The court then determines whether the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citations omitted). In determining the plausibility of a claim, the court looks to the elements of the particular cause of action, "keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element." *Id.* (quotations omitted). While "the nature and specificity of the allegations required to state a plausible claim will vary based on

---

[1] The court does not accept as true allegations that are legal conclusions. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

2

context," "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id*. (citations and quotations omitted). Thus, a "claim is facially plausible if the plaintiff has pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**Background**

Consistent with the standard articulated above, the following well-pleaded allegations, taken from plaintiff's amended complaint, are accepted as true. Defendant Blue Valley School District, USD 229 is a Kansas public school district comprised of over 20,000 students headquartered in Overland Park, Kansas. At the pertinent time, plaintiff was an African-American student of Blue Valley Northwest High School and a member of the school's "Dazzlers" dance team during her sophomore, junior and senior years of high school. Plaintiff graduated in May 2018. During plaintiff's senior year, there were 14 members on the dance team and plaintiff was one of two African-American members.

Defendant Carley Fine, who is Caucasian, was employed by the District as the head coach of the Dazzlers. Plaintiff alleges that the District hired defendant Fine despite the fact that she had no post-high school education and no teacher certification or relevant training. Defendant Kevin Murakami was, according to plaintiff, an agent of the District and he acted as the choreographer of the Dazzlers. Plaintiff alleges that the District maintained a policy of failing to adequately train their educators and staff, including defendants Fine and Murakami, on issues of discrimination, harassment and retaliation. Plaintiff alleges that during the summer before her

3

senior year, defendant Murakami excluded her from performing in a contemporary dance scheduled for the upcoming school year because her "skin was too dark" and the "audience would look at her and not the other dancers." Plaintiff alleges that defendant Murakami also told her that her "skin color clashed with the color of the costumes." Plaintiff alleges that defendant Fine had knowledge of defendant Murakami's decision to exclude plaintiff and his reasons for doing so and that she agreed with both the decision and basis for that decision. In September 2017, plaintiff's parents met with defendant Amy Pressly, the principal at the high school, for the purpose of notifying defendant Pressly about the comments made to plaintiff and the fact that plaintiff had been excluded from participating in the contemporary dance. According to plaintiff, defendant Pressly informed them that defendant Fine could pick whomever she wanted to perform in the dances.

In April 2018, plaintiff learned that she had been accepted as a member of the "Golden Girls" dance team at the University of Missouri, where she intended to enroll for college for the next academic year. Shortly thereafter, on May 1, 2018, plaintiff was assisting defendant Fine by cuing music for the Dazzlers during practice. Defendant Fine provided her personal cell phone to plaintiff for purposes of cuing the music. While plaintiff had defendant Fine's cell phone, a text message from defendant Murakami "popped up" on the phone screen. The full text exchange between defendant Murakami and defendant Fine was as follows:

    Murakami:   I can't believe Maggie didn't make it again. I'm heart broken.

    Fine:         AND [PLAINTIFF] MADE MENS.[2] I can't talk about it.

    Murakami:   THAT DOESN'T MAKE SENSE. I'm so mad.

---

[2] It is unclear what the term "MENS" references in defendant Fine's text message.

4

| | |
|---|---|
| Fine: | It actually makes my stomach hurt. |
| Murakami: | haha |
| Fine: | Bc she's fucking black. I hate that. |
| Murakami: | me too |

Plaintiff alleges that she read the exchange and was sickened. While it is unclear from the allegations in the complaint, it appears that plaintiff took a "screen shot" of the text exchange and forwarded it to her phone. That same day, plaintiff's parents showed defendant Pressly the text exchange between defendants Murakami and Fine. The District terminated defendant Fine's employment on May 2, 2018. Defendant Pressly instructed defendant Fine that she could not be on school property or have any contact with plaintiff or any other member of the dance team. Plaintiff alleges that neither the District nor defendant Pressly enforced that ban.

On May 3, 2018, a dance team dinner was held at the home of one of the members of the dance team. The dinner was coordinated by a parent. Defendant Fine attended the dinner, but plaintiff was excluded from the event. On May 8, 2018, the team banquet was held at a location in Kansas City, Missouri, but defendant Pressly had told plaintiff's parents that the team banquet had been cancelled. Defendant Fine attended the team banquet. Plaintiff was excluded from the team banquet. Plaintiff's parents notified defendant Pressly that plaintiff had been excluded from the dinners and that defendant Fine continued to participate in team activities despite the termination of her employment. According to plaintiff, defendant Pressly responded that "nothing could be done."

During the team's final school performance in May 2018, all team members except plaintiff and the other African-American member wore purple ribbons on their uniforms with the initials

"CF" for Carley Fine. After the performance, all team members except plaintiff and the other African-American member posed for team photos on school property.

**Discussion**

In Count II of her amended complaint, plaintiff alleges that the District is liable under § 1983 for hiring defendant Fine instead of a "qualified coach" for the Dazzlers and failing to adequately train Carley Fine on issues of discrimination, harassment and retaliation, resulting in the violation of plaintiff's constitutional rights. While it is not entirely clear from her allegations or her response to the motion, it appears that Count II sets forth two distinct claims against the District—an "inadequate hiring" claim and a failure-to-train claim. *See Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) (emphasizing difference between these two distinct claims) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997)). In Count IV of her amended complaint, plaintiff asserts that the District is liable under § 1983 for failing to adequately train Katie Porter and that its failure to do so resulted in Ms. Porter's violation of plaintiff's constitutional rights. The District moves for judgment on the pleadings with respect to both claims. Because the second claim requires very little discussion, the court addresses that claim first.

By way of background, Katie Porter is a teacher at an elementary school in the District and, at the pertinent time, was the mother of another dancer on the Dazzlers team. Ms. Porter was initially named as a defendant in this case. She filed a motion to dismiss based on plaintiff's failure to plausibly allege that Ms. Porter had any involvement in the deprivation of plaintiff's constitutional rights and, relatedly, plaintiff's failure to plausibly allege that Ms. Porter acted

6

under color of state law as required for liability under § 1983. The court granted the motion to dismiss on that basis and Ms. Porter is no longer a defendant in this case. Thus, because plaintiff has failed to allege sufficient facts to support her claim that Ms. Porter committed a constitutional violation, plaintiff's claim against the District based on its alleged failure to train Ms. Porter necessarily fails. *See J.H. ex rel. J.P. v. Bernalillo County*, 806 F.3d 1255, 1262 (10th Cir. 2015) (municipality cannot incur liability for failing to provide adequate training to official if that official has not committed a constitutional violation); *Zuchel v. City & County of Denver*, 997 F.2d 730, 734-35 (10th Cir. 1993) (Municipal liability predicated on the failure to train officers to conform to the Constitution's requirements also requires a showing that the officers themselves violated the Constitution.). The court, then, grants the District's motion for judgment on the pleadings as to Count IV.

The court turns, then, to Count II of the amended complaint, in which plaintiff challenges the District's decision to hire Carley Fine and its alleged failure to train defendant Fine thereafter. The District's motion for judgment on the pleadings is directly solely at the allegations concerning the District's initial hiring decision. As the Tenth Circuit has recognized, it is difficult to hold a municipality liable for a single inadequate hiring decision:

> In *Brown*, the Supreme Court specifically examined the showing required to hold a municipality liable for a single inadequate hiring decision. The Court emphasized the difference between failure-to-train and inadequate-hiring claims and refused to simply "import the reasoning of *Canton* into the hiring context." The Court observed that basing municipal liability on an official's failure to carefully scrutinize an application for employment poses the "greatest risk" that a municipality will be held liable for the actions of its employees rather than its own actions, since every injury inflicted by a municipal employee can be traced to hiring in a but-for sense. The Court therefore held that when reviewing hiring decisions, courts must take even greater care to adhere to stringent culpability and causation

7

> standards and carefully "test the link" between the policymaker's hiring decision and the particular injury alleged.
>
> Merely showing that a municipal officer engaged in less than careful scrutiny of an applicant resulting in a generalized risk of harm is not enough to meet the rigorous requirements of "deliberate indifference." Culpability requires a strong connection between the background of the particular applicant and the specific constitutional violation alleged. Establishing municipal liability in the hiring context requires a finding that "this officer was highly likely to inflict the particular injury suffered by the plaintiff."

*Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) (citing and quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997)).

To the extent plaintiff seeks to hold the District liable for failing to properly screen defendant Fine before hiring her as the coach of the Dazzlers, the allegations in the amended complaint do not plausibly support that theory. The amended complaint does not contain any allegations regarding the District's application, screening or hiring practices with respect to coaches or teachers. The only allegation concerning defendant Fine's background at the time she was hired as the Dazzlers coach is that she lacked any post-high school education and lacked any "certifications and/or training on the subject she taught." Assuming that the District had knowledge that defendant Fine lacked any post-high school education or training, it is certainly not "plainly obvious" from that fact that defendant Fine, if hired, would discriminate against students based on race. *See Brown*, 520 U.S. at 412-13 (applicant's pleas of guilty to various traffic violations and assault and battery, resisting arrest, and public drunkenness arising out of college fight did not make use of excessive force a "plainly obvious consequence" of decision to hire him as a police officer). There is simply nothing in the amended complaint plausibly suggesting that defendant Fine's background could have led the District to conclude that she was "highly likely" to discriminate against students based on race. The District, then, cannot be held

8

liable for the decision to hire defendant Fine. *Barney*, 143 F.3d at 1308-09 (officer's prior arrest for possession of alcohol as a teenager and receipt of several speeding tickets could not have led Sheriff to conclude that officer was highly likely to inflict sexual assault on inmates if hired as a correctional officer). The District's motion, then, is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Blue Valley Unified School District, USD 229's motion for partial judgment on the pleadings (doc. 40) is granted. Specifically, the court dismisses Count IV of plaintiff's amended complaint and dismisses that portion of Count II of the amended complaint that alleges an inadequate-hiring claim against the District.

**IT IS SO ORDERED.**

Dated this 20th day of June, 2019, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge